UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

WILLIAM DELAROSA,

               Defendant.
------------------------------------------X

04 Cr. 424-2 (RWS)

SENTENCING OPINION

Sweet, D.J.,

6/15/05

        On January 27, 2005, Defendant William Delarosa ("Delarsoa") appeared before the Honorable Kevin Nathaniel Fox of this district and allocuted to the conduct charged in the sole count of the indictment, conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Delarosa's plea was accepted on February 24, 2005. Delarosa will be sentenced to 188 months imprisonment and five years supervised release. A special assessment fee of $100 is mandatory and is due immediately.

**Prior Proceedings**

        On May 6, 2004, the government filed a sealed indictment against Delarosa and his co-defendants, charging them with a single count of violating 21 U.S.C. § 846, conspiracy to distribute and

1

possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Delarosa was issued on the same day. Delarosa was arrested on May 11, 2004, and he has remained in custody since that time. Delarosa entered a guilty plea on January 27, 2005, which this Court accepted on February 24, 2005, and currently Delarosa is scheduled for sentencing on June 13, 2005.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

2

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

## The Defendant

The Court adopts the facts set forth in the Probation Department's Pre-sentence Report with respect to Delarosa's family history and personal history.

3

**The Offense Conduct**

The indictment filed in this action charges that from at least 1999 through May 2004, Delarosa, along with his nineteen co-defendants and others, were members of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Daly Avenue Organization" or the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Delarosa was charged as a supervisor within the second tier of the Organization's hierarchy. Second-in-command to the Organization's leader, David Delarosa, who, incidentally, is his cousin, Delarosa carried decision-making authority and acted as a manager to the conspiracy's other members.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half of a kilogram per month, although the actual amount could vary from month to month.[1] With

---

[1] Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the

4

respect to Delarosa specifically, the Court estimates that he should be held accountable for conspiring to distribute between 10 and 30 kilograms of heroin during his thirty-three month

---

equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles. The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day." (Trial Trans. p. 137) (emphasis added). That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred." (Tr. Trans. p. 137).

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles." (Tr. Trans. p. 387). On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles." (Tr. Trans. p. 388). But, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be boasting about how much drugs they sold that day." (Tr. Trans. p. 388) (emphasis added).

The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift. The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose. (Tr. Trans. p. 135). The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

involvement (from August 2001 through May 2004)[2] with the conspiracy.

Delarosa was arrested on May 11, 2004.

**The Relevant Statutory Provisions**

The statutory minimum term of imprisonment for the sole count of the indictment is ten years and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. If a term of imprisonment is imposed, the Court subsequently shall impose a term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Delarosa is not eligible for probation because the instant offense is one for which probation has been expressly

---

[2] Delarosa was arrested in August 2001 for criminal sale of a controlled substance in the vicinity of Daly Avenue, revealing his involvement with the conspiracy from at least that date. He was next arrested for the same conduct in the same vicinity in December 2001, just four months later, but was not arrested again until May 2004 on the federal charges now before the Court.

According to the government, he began selling heroin to an undercover officer in July 2003. Despite the absence of arrests in this intervening eighteen month period, Delarosa has failed to present any evidence of his withdrawal from the conspiracy. Furthermore, given the familial relationship shared between him and his cousin, the leader of the Organization, the Court finds that Delarosa's participation in the conspiracy continued from his initial arrest in August 2001 through his current arrest in May 2004.

6

precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is required. See 18 U.S.C. § 3013.

Delarosa may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court pursuant to 21 U.S.C. § 862(a)(1)(A). Federal benefit is defined to mean "'any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States' but 'does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.'" See 21 U.S.C. § 862(d).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its

7

determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

**The Guidelines**

The November 1, 2004 edition of the United States Sentencing Commission, <u>Guidelines Manual</u> ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1(a)(2), which specifies that the base offense level is set in accordance with the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(2). At his allocution, Delarosa indicated that he knowingly conspired with others to possess, with intent to distribute, heroin. The Court finds that the amount for which Delarosa should be held accountable is between 10 and 30 kilograms of heroin. In light of this latter amount, and pursuant to the Drug Quantity Table, the base offense level is 36.

Because Delarosa was a manager or supervisor and the criminal activity involved five or more participants, a three level increase is warranted pursuant to U.S.S.G. § 3B1.1(b).

Delarosa argues that he should be eligible for the two level reduction under the safety valve provision. See U.S.S.G. § 5C1.2(a). However, Delarosa occupied a position of leadership within the organization, thereby disqualifying him from receiving the safety valve reduction under U.S.S.G. § 5C1.2(a)(4).

Based on Delarosa's plea allocution, he has accepted responsibility for the instant offense. Furthermore, since he offered timely notice of his intention to plead guilty, thus allowing the government to allocate its resources more efficiently, the offense level is reduced three levels, pursuant to U.S.S.G. §§ 3E1.1(a), (b).

The adjusted offense level resulting from the foregoing calculations and discussion is 36.

Based on the offense level of 36 and a Criminal History Category of I, the guideline range for imprisonment is 188 to 235 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(b).

Delarosa is not eligible for probation because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5B1.1(b)(2), comment. n.2.

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4).

Subject to Delarosa's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the

Supreme Court's decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2nd Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B).

The Court has weighed these factors, and the remaining sentencing factors listed in 18 U.S.C. §3553(a), concluding that a Guideline sentence is appropriate in this case.

**The Sentence**

For the instant offense, Delarosa is sentenced to 188 months imprisonment and five years supervised release. As Delarosa has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100 payable to the United States is mandatory and due immediately. Because Delarosa lacks financial resources and in consideration of the factors listed in 18 U.S.C. § 3572, no fine is imposed.

11

As mandatory conditions of supervised release, Delarosa shall (1) abide by the standard conditions of supervision (1-13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; and (4) not possess a firearm or destructive device.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

Delarosa shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The release of available drug testing evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer, is hereby authorized. Delarosa is required to contribute to the costs of services rendered (co-payment), in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment.

Delarosa shall report to the nearest Probation Office within 72 hours of release from custody and shall be supervised by the district of residence.

This sentence is subject to modification at the sentencing hearing now set for June 13, 2005.

It is so ordered.

New York, NY
June 13, 2005

ROBERT W. SWEET
U.S.D.J.